**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.:

ROBERT WATSON,

    Plaintiff,

v.

ARAMARK SPORTS & ENTERTAINMENT SERVICES, INC.

    Defendant.

___

**COMPLAINT**

___

**PRELIMINARY STATEMENT**

1. This lawsuit arises from the Plaintiff's employment by Defendant between approximately March of 2014 and July 2014 as a Chef de Cuisine in Defendant's Spruce Tree Terrace Café in Mesa Verde National Park. Defendant failed to pay Plaintiff the minimum overtime wage rate required by the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (2012)("FLSA") for hours worked over forty (40) in a work week.

2. This matter also involves a claim for breach of employment contract. Plaintiff and Defendant entered into an employment agreement for a specific period of time, and for a specific wage. During Plaintiff's employment he was not paid the agreed upon wage.

## JURISDICTION AND VENUE

3. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, this case arising under the laws of the United States. This action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* Jurisdiction is also conferred by 28 U.S.C. § 1367, as this case includes claims made under Colorado law, which stem from the same case or controversy.

4. Venue is proper pursuant to 28 U.S.C. § 1391 (b)(2), as a substantial part of the events or omissions giving rise to the claims occurred in the District of Colorado.

## THE PARTIES

5. During all times relevant to this action, Plaintiff Robert Watson was employed by the Defendant as a Chef de Cuisine in Defendant's restaurant located inside Mesa Verde National Park in Colorado. Plaintiff's Fair Labor Standards Act consent-to-sue form is attached hereto as Exhibit 1.

6. During all times relevant to this action, the Plaintiff was an employee of the Defendant as defined by 29 U.S.C. § 203(e).

7. During all times relevant to this action, the Plaintiff was employed by the Defendant as defined by 29 U.S.C. § 203(g).

8. During all times relevant to this action, the Plaintiff was an employee engaged in commerce or in the production of goods for commerce.

9. Defendant Aramark Sports & Entertainment Services, Inc. is a limited liability company domiciled in Delaware and maintaining a registered agent whose address is 1675 Broadway, Suite 1200, Denver, CO 80202.

10. During all times relevant to this action, Defendant Aramark conducted business in the District of Colorado.

11. During all times relevant to this action, Defendant Aramark employed the Plaintiff within the meaning of 29 U.S.C. §203(g).

12. During all times relevant to this action, Defendant Aramark was an employer of Plaintiff within the meaning of 29 U.S.C. § 203(d).

13. During all times relevant to this action, the Plaintiff was employed by the Defendant in an "enterprise engaged in commerce or in the production of goods for commerce", as defined by 29 U.S.C. §203(s)(1).

14. During all times relevant to this action, the Plaintiff and others were employed by the Defendant for handling and otherwise working on goods or materials that had been moved in or were produced for commerce by any person. 29 U.S.C. § 203(s)(1).

15. Upon information and belief, Defendant had annual gross revenues in excess of $500,000 and employed two or more persons, including Plaintiff, who handled and worked on materials which had been moved in interstate commerce. 29 U.S.C. § 203(s)(1).

## STATEMENT OF FACTS

16. Defendant employed the Plaintiff as a Chef de Cuisine in its restaurant located inside Mesa Verde National Park, Colorado.

17. On or about February 5, 2014, Defendant Aramark provided Plaintiff with an Employment Details Letter.

18. The Employment Details Letter stated that Plaintiff would be employed by Defendant from March 10, 2014 to November 5, 2014 as Chef de Cuisine.

19. Plaintiff was a salaried employee at Aramark because:

   a) The Employment Details Letter stated that Plaintiff would be entitled to a salary of $32,500.

   b) Plaintiff was neither required to clock-in and clock-out of work, nor was he required to maintain a record of the number of hours he worked each week.

   c) Throughout his first six weeks of employment, Plaintiff worked approximately 70 hours each week.

   d) After Plaintiff's first six weeks of employment, he generally worked 40 to 50 hours a week.

   e) Plaintiff generally received a weekly gross pay of $625.00, regardless of how many hours he worked each week.

   f) Plaintiff was never paid any overtime wages for working more than 40 hours in a week.

   g) Plaintiff did not receive a day off of work during his initial six weeks of employment with Defendant, yet was only paid a weekly gross wage of $625.00 during that period.

20. Plaintiff was an exempt employee under the Fair Labor Standards Act.

21. Defendant employed Plaintiff from approximately March of 2014 until July of 2014.

22. Defendant engaged Plaintiff at a contractual wage rate of $32,500.00 for 34 weeks.

23. Plaintiff started working for Defendant on or about March 9, 2014.

24. Plaintiff should have been paid a weekly gross wage of approximately $955.00 based on the Employment Details Letter, which provided that Plaintiff would be employed for thirty-four (34) weeks and paid a salary of $32,500.

25. Throughout Plaintiff's employment at Aramark, Plaintiff was generally paid a weekly gross pay of only $625.00.

26. Plaintiff was paid only $625.00 of the $955.00 due and owing to him for each week Defendant employed him.

27. Throughout Plaintiff's employment at Aramark, Plaintiff's weekly net pay after applying tax and lodging deductions was generally $488.73.

28. On or about May 25, 2014, Plaintiff was admitted into Mercy Hospital in Durango, Colorado for treatment of a staph infection.

29. On or about May 25, 2014, Plaintiff underwent surgery on his leg due to this staph infection.

30. Throughout his employment by Defendant, Plaintiff was denied overtime premiums for hours worked over forty hours in a work week. Defendant did not pay Plaintiff the FLSA's mandatory overtime premium of one-and-one-half times the regular rate of pay for hours worked over forty.

31. Upon information and belief, Defendant purchased goods and products from suppliers and distributors outside the state of Colorado. These goods and products were used in producing the food served and sold at Defendant's restaurants.

32. From May 25, 2014 to June 5, 2014, Plaintiff was sick due to a staph infection.

33. Plaintiff was unable to work from May 25, 2014 to May 30, 2014 because he was being treated and was healing from a staph infection at Mercy Hospital in Durango, Colorado.

34. Plaintiff did not work from May 31, 2014 to June 4, 2014 because his doctor recommended that Plaintiff take time off of work to heal from his staph infection.

35. Even though Plaintiff is a salaried employee, Defendant did not pay Plaintiff on June 12, 2014, for the pay period of May 29, 2014 to June 4, 2014, while he was sick and recovering from his staph infection.

36. Plaintiff returned to work on or about June 5, 2014, after he recovered from his staph infection.

37. Plaintiff was terminated from employment on or about June 13, 2014.

38. On or about July 1, 2014, Jody Brammer-Hoelter, LLC, on behalf of Plaintiff, sent Defendant's registered agent a Demand for Payment for the amount of $4,915.00 for unpaid wages he was owed while he was employed by Defendant.

39. Defendant's registered agent did not pay Plaintiff on the Demand for Payment within fourteen days after receipt of such Demand.

40. Defendant's registered agent did not respond to Plaintiff's Demand for Payment.

41. Plaintiff has suffered significant harm as a result of Defendant's failure to pay him the wages owed under the Employment Details Letter.

42. Plaintiff has suffered significant harm as a result of Defendant's failure to pay him the required overtime premiums.

## CLAIMS FOR RELIEF

### COUNT I: FAIR LABOR STANDARDS ACT – OVERTIME WAGES

43. Plaintiff re-alleges and incorporates by reference the preceding facts and allegations.

44. Plaintiff Robert Watson asserts this claim on behalf of himself, pursuant to 29 U.S.C. § 216(b).

45. Defendant employed Plaintiff in an enterprise engaged in commerce or in the production of goods for commerce. 29 U.S.C. § 207(a).

46. The Defendant violated the FLSA by failing to pay Plaintiff the proper overtime wage rate for all hours worked in excess of forty hours per work week. 29 U.S.C. § 207.

47. The Defendant's failure to pay to the Plaintiff his federally mandated overtime wages was a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

48. Defendant acted knowingly, willfully and/or in reckless disregard in failing to pay Plaintiff overtime wages.

49. Plaintiff is entitled to unpaid overtime wages, liquidated damages, attorneys' fees and costs. 29 U.S.C. § 216(b).

## COUNT II: BREACH OF CONTRACT

50. Plaintiff incorporates by reference and re-alleges the preceding facts and allegations.

51. Plaintiff and Defendant entered into a valid employment contract when:

    a. Defendant extended a conditional offer of employment to Plaintiff on February 5, 2014 for the position of Chef de Cuisine.

    b. Plaintiff accepted Defendant's offer of employment when he fulfilled all of the conditions stated in Defendant's offer of employment, including providing satisfactory pre-employment screening results, providing satisfactory Form I-9 documentation, and confirming employment eligibility through E-Verify.

    c. There was sufficient consideration for this employment contract because Plaintiff agreed to work for Defendant as Chef de Cuisine for a 34-week period in exchange for a salary of $32,500.00.

      d. Plaintiff began working for Defendant as Chef de Cuisine on or about March 9, 2014.

52. Plaintiff's Employment Details Letter provided that Plaintiff's employment would continue for a definite period from March 10, 2014 to November 5, 2014.

53. Plaintiff's Employment Details Letter specified that Plaintiff's salary was $32,500 for the period of employment and that Plaintiff would be paid weekly.

54. Based on Plaintiff's salary and the period of employment for which he was hired, Plaintiff should have received a gross wage of $955.00 each week.

55. Defendant breached the employment contract by paying Plaintiff only $625.00 of the $955.00 due and owing to him for each week Defendant employed Plaintiff.

56. Defendant breached the employment contract by failing to pay Plaintiff, a salaried employee, on June 12, 2014, for the period of May 29, 2014 to June 4, 2014.

57. If Defendant regarded Plaintiff as an hourly employee, and on that basis did not pay him for the period May 29, 2014 through June 4, 2014, then Defendant should have paid Plaintiff an overtime rate for all hours worked in any week over 40 hours.

58. Based on the Employment Details Letter, Defendant owes Plaintiff $4,915.00 for unpaid wages due and owing under the employment contract dated February 5, 2014.

## COUNT III: QUANTUM MERUIT

59. Plaintiff incorporates by reference and re-alleges the preceding facts and allegations.

60. In the alternative of a breach of contract claim, Plaintiff states a claim for relief based on the theory of quantum meruit.

61. Defendant benefited from Plaintiff's work as Chef de Cuisine.

62. Plaintiff engaged in such work for Defendant under the belief that Defendant would compensate him for work by paying him $955.00 each week, pursuant to the Employment Details Letter provided to Plaintiff on February 5, 2014.

63. Defendant benefited from the work that Plaintiff provided, but has only partially compensated Plaintiff for his work. Defendant should pay Plaintiff for the unpaid wages due to him under the theory of *quantum meruit* for the reasonable value of the work performed by Plaintiff, pursuant to the Employment Details Letter provided to Plaintiff.

## COUNT IV: DAMAGES

64. Plaintiff seeks payment of wages earned, but not paid.

65. Plaintiff seeks payment at one and one-half times his regular hourly rate for all overtime hours worked.

66. Plaintiff seeks one hundred twenty-five percent (125%) of the amount of all wages wrongly withheld, up to Seven thousand five hundred dollars ($7,500.00) as provided under §8-4-109(3)(b)(I), C.R.S.

67. Plaintiff seeks an additional fifty percent (50%) of the amount of all wages wrongly withheld, as penalty for Defendant's willful failure to pay wages due and owing, as provided under §8-4-109(3)(c), C.R.S.

68. Plaintiff seeks interest on unpaid wages due for all periods during which he was deprived of wages.

69. Plaintiff seeks an award of court costs and reasonable attorneys' fees.

70. Plaintiff seeks pre-judgment and post-judgment interest at the highest lawful rate.

71. Plaintiff seeks post-judgment interest on unpaid pre-judgment interest at the highest lawful rate.

72. Plaintiff seeks all costs of collection of all damages, including attorneys' fees.

73. Plaintiff seeks reimbursement for costs, including but not limited to, filing, research, investigations, depositions, and expert fees.

74. Plaintiff seeks payment for all social security, tax adjustments and tax preparation costs to adjust for unpaid back taxes.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be rendered herein in favor of Plaintiff and against Defendant as follows:

a. Judgment under Counts 2, 3 and 4 awarding Plaintiff unpaid wages, and penalties allowed by law.

b. Judgment under Counts 1 and 4 award Plaintiff unpaid overtime wages at the rate of one and one-half times his regular rate of pay.

c. Such other relief as the Court deems just and proper.

Respectfully submitted this 9th day of March, 2015.

/s/ *Franchesca Lata*
Franchesca Lata, Esq.
Johanna Brammer-Hoelter, Esq.
Jody Brammer-Hoelter, LLC
808 S. Public Road, Suite 102
Lafayette, CO 80026
Tel: (303) 666-6727
Fax: (303) 604-6166
franchesca@hoelterlaw.com
jody@hoelterlaw.com

Counsel for Plaintiff