# SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is entered into by and between Robert Watson ("Watson") and Aramark Sports & Entertainment Services, LLC ("Aramark" or the "Company").  Watson and Aramark are collectively referred to herein as "the Parties," and each is referred to singularly as a "Party."

**WHEREAS**, Watson was formerly employed by Aramark;

**WHEREAS**, Watson's employment with Aramark terminated effective on or around June 13, 2014 ("Separation Date");

**WHEREAS**, on March 9, 2015, Watson filed an action in the United States District Court, District of Colorado, captioned *Robert Watson v. Aramark Sports & Entertainment Services, Inc.*, Case No. 1-15-CV-00493, alleging claims for, among other things: (1) violation of the Fair Labor Standards Act ("FLSA"), (2) breach of contract, and (3) quantum meruit (the "Civil Action");

**WHEREAS**, Aramark denies and continues to deny all of the allegations raised by Watson in the Civil Action; and

**WHEREAS**, Watson and Aramark mutually desire to resolve any and all disputes relating to Watson's employment relationship with Aramark, the termination of that employment relationship, and the subject matters of the Civil Action.

**NOW, THEREFORE, IT IS HEREBY AGREED**, by and between Watson and Aramark as follows:

1. GENERAL WAIVER & RELEASE.  Except as described in Sections 1.3 and 1.4 below, Watson waives and releases any and all claims, whether or not now known to Watson against the Company, all of its parent, subsidiary and affiliated companies or entities, and all of their respective past and present officers, directors, employees, agents and assigns (collectively, the "Releasees"), arising from or relating to any and all acts, events and omissions occurring prior to the date Watson signs this Agreement.

1.1  Included Claims.  The claims being waived and released include, without limitation, any and all claims, including but not limited to:  wage claims, tort claims, contract claims, equitable claims, breach of fiduciary duty claims, ERISA claims, wrongful termination claims, discrimination claims, public policy claims, retaliation claims, constructive discharge claims, failure to provide reasonable accommodation claims, failure to engage in the interactive process claims, failure to prevent discrimination claims, failure to prevent retaliation claims, statutory claims, personal injury claims, emotional distress claims, invasion of privacy claims, defamation claims, fraud claims, quantum meruit claims, and any and all claims arising under any federal, state or other governmental statute, law, regulation or ordinance covering or relating to employment and/or wages, hours and working conditions, including but not limited to the Colorado Wage Act, the Colorado Anti-Discrimination Act, the Colorado Job Protection and Civil Rights Enforcement Act, the Colorado Fair Employment Practices Act, the Colorado Revised Statutes, the Fair Labor Standards Act, Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act, and the Family and Medical Leave Act of 1993, and all claims covering or relating to alleged discrimination in employment including race, color,

religious creed, national origin, ancestry, physical or mental disability, medical condition, marital status, sex, age, harassment, or retaliation.

   1.2  Unknown Claims.  In waiving and releasing any and all claims against the Releasees, whether or not now known to Watson, Watson understands that this means that if Watson later discovers facts different from or in addition to those facts currently known, by Watson, or believed by him to be true, the waivers and releases of this Agreement will remain effective in all respects – despite such different or additional facts and Watson's later discovery of such facts, even if Watson would not have agreed to this Agreement if he had prior knowledge of such facts.  Watson forever waives all rights to assert that this Agreement was the result of a mistake in law or in fact, or to assert that any or all of the legal theories or factual assumptions used for purposes of negotiating this Agreement are for any reason inaccurate or inappropriate.

   1.3  Exceptions.  The only claims that are not being waived and released by Watson under this Section are claims he may have for:

    a.  unemployment, state disability and/or paid family leave insurance benefits pursuant to the terms of applicable state law;

    b.  any benefit entitlements that are vested pursuant to the terms of a Company-sponsored benefit plan governed by federal law known as "ERISA;" and

    c.  violation of any federal, state or local statutory and/or public policy right or entitlement that, by applicable law, cannot be waived.

   1.4  Government Agency Claims Exception.  Nothing in this Agreement prevents or prohibits Watson from (i) filing a claim with a government agency that is responsible for enforcing a law; or (ii) cooperating, participating or assisting in any government or regulatory entity investigation or proceeding.  However, Watson understands that, because he is waiving and releasing all claims for monetary damages and any other form of personal relief, Watson may only seek and receive non-personal forms of relief through any such claim.

   2.  INDEMNIFICATION.  Watson will defend, indemnify and save forever harmless Releasees from any claims, actions, causes of action, suits, debts, liens, demands and/or judgments made by any person, corporation, or entity including, but not limited to any insurer, governmental entity, and/or medical provider who have paid or may in the future pay benefits to Watson on account of or related to, resulting from, or arising directly or indirectly, out of Watson's employment relationship with Aramark, the termination of that employment relationship, and the subject matter of the Civil Action, and/or any losses of damages resulting there from.

   3.  CONSIDERATION.  In full consideration of Watson's execution of this Agreement and his agreement to be legally bound by its terms, and subject to:  (i) both Watson and his attorneys first providing to Aramark fully completed and signed/dated IRS W-9 Forms; (ii) Watson providing to Aramark a fully completed and signed/dated IRS Form W-4; and (iii) the Court granting approval of the Parties' settlement of Watson's FLSA overtime and liquidated damage claims (and related attorneys' fees and costs claims), and the dismissal with prejudice of such claims, without any material modifications to the terms of this Agreement, Aramark agrees

to pay to Watson and his attorneys the gross sum of Fifteen Thousand, Five Hundred Dollars and Zero Cents ($15,500.00), to be allocated as follows:

      3.1     A check in the gross amount of Six thousand two hundred forty ($6,240.00), less applicable withholdings and taxes, shall be payable to "Robert Watson." Aramark will issue an IRS Form W-2 with respect to this payment.

      3.2     A check in the amount of Four thousand one hundred sixty ($4,160.00) payable to "Robert Watson," representing compensation for alleged non-wage damages, including penalties and statutory interest. Aramark will issue an IRS Form 1099 with respect to this payment.

      3.3     A check in the amount of Five thousand one hundred ($5,100.00) payable to "Jody Brammer-Hoelter, LLC," representing compensation for alleged attorney's fees and costs incurred by Watson. Aramark will issue applicable IRS Form(s) 1099 with respect to this payment.

The settlement checks shall be delivered to Watson's attorney of record Jody Brammer-Hoelter not later than fifteen (15) business days following the Effective Date of this Agreement.

      3.4     Watson expressly acknowledges and warrants that he is, and shall be, responsible for all federal, state, and local tax liabilities that may result from the payments described in this Section and he hereby warrants that Aramark shall bear no responsibility for any such tax liabilities. Watson further agrees and acknowledges that, with respect to the amount of the IRS Form 1099 payment made to Watson, he shall indemnify and hold harmless Aramark for any possible federal, state, or local tax liabilities resulting from such payment and that he shall reimburse any taxes, interest and/or penalties assessed against Aramark for any such tax liabilities caused by such payment.

      4.     <u>DISMISSAL OF CIVIL ACTION WITH PREJUDICE</u>. It is expressly agreed and understood that the Parties must seek approval from the Court in order to effectuate a valid and enforceable settlement and compromise of Watson's claims alleged under the Fair Labor Standards Act ("FLSA"), in accordance with *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-55 (11th Cir. 1982) and related case authority. The Parties understand and agree that this Agreement addresses and resolves the FLSA overtime and liquidated damages claim and related attorneys' fees and costs claim alleged in the Civil Action and will be filed as an Exhibit to a joint motion seeking Court approval of the settlement. The Parties understand and agree that the effectiveness of the Agreement is expressly contingent upon (1) Watson seeking Court-approval of the settlement of his FLSA overtime and liquidated damages claims (and related attorneys' fees and costs claim), (2) the Court granting approval of the Parties' settlement of Watson's FLSA overtime and liquidated damage claims (and related attorneys' fees and costs claims) based upon a finding that the Parties' settlement represents a fair and reasonable compromise of a *bona fide* dispute regarding Watson's FLSA claims, and (3) the Court dismissing the Civil Action in its entirety with prejudice. In the event that the Court does not approve the Parties' settlement and dismiss the Civil Action in its entirety with prejudice, Aramark will not be required to pay any money to Watson or his counsel and the Agreement will

be deemed void, have no effect, and cannot be used for any purpose or introduced as evidence in any Court proceeding.

       5.     NON-DISPARAGEMENT.  Watson agrees not to make or publish any denigrating or disparaging written or oral statements about the Releasees, their respective directors, officers, employees, and customers or agents, or related to the Releasees' business or their products, services, policies and practices, or to encourage or induce others to make or publish any such statements about the Releasees.  Watson agrees not to disparage the Releasees in any fashion, including but not limited to any disparagement via the Internet, whether anonymous or not, except if testifying truthfully under oath pursuant to a validly served subpoena or other legal process compelling such testimony or otherwise.  With respect to any inquiry regarding Watson's employment with Aramark, Aramark has a policy and process in place applicable to all former employees whereby a third-party vendor confirms the fact of employment and provides only dates of employment and last position held.  In order to ensure that any inquiries receive this neutral and uniform handling, Watson agrees to refer all reference requests to The Work Number at www.theworknumber.com or (800) 367 5690, Employer code 12577, which will provide only Watson's dates of employment and last position held.

       6.     ACKNOWLEDGMENTS.  Watson agrees and represents that the following are true and correct:

       6.1     Watson has received all amounts due and owing from Aramark including but not limited to all wages earned, minimum wages, overtime and double time wages.  No other amounts are due to Watson from Aramark except pursuant to this Agreement (provided it becomes effective and enforceable).

       6.2     Watson acknowledges that Aramark has no future obligation to re-employ him and he agrees not to seek re-employment with Aramark or any of its related entities.  In the event Watson applies for employment with Aramark or any of its related entities in violation of this agreement, Aramark and/or its related entities may reject Watson's application outright and this Agreement shall constitute good cause and a legitimate, non-discriminatory/non-retaliatory reason for rejecting any application by Watson for employment.

       6.3     All of the Parties acknowledge that they have been represented by competent, experienced counsel throughout all negotiations that preceded the execution of this Agreement, and this Agreement is made with the consent and advice of counsel.  This Agreement shall be construed and interpreted as if all of its language were prepared jointly by Watson and Aramark. No language in this Agreement shall be construed against a Party on the ground that such Party drafted or proposed that language.

       6.4     This Agreement shall be binding upon the Parties and upon their respective heirs, administrators, representatives, executors, successors and permitted assigns, and shall inure to the benefit of the Parties, and upon their respective heirs, administrators, representatives, executors, successors and permitted assigns.

       6.5     The Parties agree to use their best efforts and to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement and

effectuate the terms of this Agreement, including the dismissal with prejudice of the Civil Action.

7. NO ADMISSION.  Nothing about the fact of or content in this Agreement shall considered to be or treated by either party as an admission of any wrongdoing, liability or violation of law by Watson or by Aramark or any of the Releasees.  Nothing in this paragraph shall be deemed to preclude any Party from using this Agreement as evidence in any proceeding that any Party may file to enforce this Agreement and its provisions.

8. CONSIDERATION PERIOD & EFFECTIVE DATE.

8.1 Watson has been given reasonable time after the date Watson received this Agreement within which to review and consider it, to discuss it with an attorney of his own choosing, and to decide whether or not to sign it.  Watson acknowledges that he has consulted with his attorney of record Jody Brammer-Hoelter prior to signing this Agreement.

8.2 This Agreement will become effective and enforceable on the date this Agreement is duly executed by all parties ("Effective Date"), provided that a signed and dated copy is delivered to their respective attorneys.

9. RETURN OF AGREEMENT.  Watson, or his counsel, should return this Agreement, signed and dated by Watson and his counsel to:

> Eric Meckley
> MORGAN, LEWIS & BOCKIUS LLP
> One Market, Spear Street Tower
> San Francisco, CA  94105
> Fax:  (415) 442-1001, email:  emeckley@morganlewis.com

10. JUDICIAL INTERPRETATION/MODIFICATION; SEVERABILITY.  In the event that, any one or more provisions (or portion thereof) of this Agreement is held to be invalid, unlawful or unenforceable for any reason, the invalid, unlawful or unenforceable provision (or portion thereof) shall be construed or modified so as to provide the Parties with the maximum protection that is valid, lawful and enforceable, consistent with the intent of Aramark and Watson in entering into this Agreement.  If such provision (or portion thereof) cannot be construed or modified so as to be valid, lawful and enforceable, that provision (or portion thereof) shall be construed as narrowly as possible and shall be severed from the remainder of this Agreement (or provision), and the remainder shall remain in effect and be construed as broadly as possible, as if such invalid, unlawful or unenforceable provision (or portion thereof) had never been contained in this Agreement.

11. CHANGES TO AGREEMENT.  No changes to this Agreement can be effective *except* via another written agreement signed by Watson and an authorized executive officer of Aramark.

12. COMPLETE AGREEMENT.  As of the Effective Date, this Agreement cancels, supersedes and replaces any and all prior agreements (written, oral, or implied-in-fact or in-law)

between Watson and Aramark regarding all of the subjects covered by this Agreement. This Agreement is the full, complete, and exclusive agreement between Watson and Aramark regarding all of the subjects covered by this Agreement, and neither Watson nor Aramark is relying on any representation or promise that is not expressly stated in this Agreement.

13. **CHOICE OF LAW.** The parties further agree that any dispute arising under this Agreement, or related in any way to the term of same, shall be governed by the laws of the State of Colorado, without regard to choice of law principles.

14. **EXECUTION.** This Agreement may be executed in counterparts by facsimile and/or electronic mail, all of which taken together shall constitute on instrument enforceable and binding upon the undersigned parties.

Dated: 2/1, 2016         By *Tracy Parola*
                         Aramark Sports & Entertainment Services, LLC
                         Name: Tracy Parola
                         Title: Assistant General Counsel

I HAVE READ THIS AGREEMENT. I UNDERSTAND THAT I AM GIVING UP IMPORTANT RIGHTS. I AM AWARE OF MY RIGHT TO CONSULT WITH AN ATTORNEY OF MY OWN CHOOSING AND I HAVE DONE SO. I SIGN THIS AGREEMENT FREELY AND VOLUNTARILY, WITHOUT DURESS OR COERCION.

Dated: 1-27-2016, 2016    *Robert L Watson JR*
                          Robert Watson

Dated: 1-27-2016, 2016    By: *Jody Brammer-Hoelter*
                          Jody Brammer-Hoelter, LLC

DB2/ 28104494.1